290 So.2d 13 (1974)
Benjamin Levy BURNSED, Appellant,
v.
SEABOARD COASTLINE RAILROAD COMPANY, a Corporation, Appellee.
No. 43651.
Supreme Court of Florida.
February 6, 1974.
*15 Ronald J. Hoffer, Dade City, for appellant.
George D. Lynn, Jr., of Harrison, Greene, Mann, Davenport, Rowe & Stanton, St. Petersburg, for appellee.
ROBERTS, Justice.
This cause is before us to review an interlocutory order of the Circuit Court of Pasco County holding that Section 357.08, Florida Statutes, F.S.A. is unconstitutional in that it is an arbitrary and unreasonable exercise of the police power. Although Burnsed seeks interlocutory appeal of the partial summary judgment entered by the trial court in favor of Seaboard Coastline Railroad Company, we must treat the appeal as a petition for writ of certiorari pursuant to our authority to do so under Article V, Section 2, Florida Constitution F.S.A. (1973). We have jurisdiction pursuant to Article V, Section 3(b)(3).
Preliminary to ruling on the constitutionality vel non of Section 357.08, Florida Statutes, in view of the changes which have been wrought by the revision of Article V, Florida Constitution, which became effective January 1, 1973,[1] and since this case arrives at this Court upon an appeal of an interlocutory rather than final order of the trial court which directly passed on the constitutionality of Section 357.08, finding it to be unconstitutional, the necessity arises for this Court to construe "new" Article V, Section 3(b)(1), Constitution of Florida (1973), in conjunction with "new" Article V, Section 3(b)(3), Constitution of Florida (1973). The question arises whether this cause should be treated as a direct appeal pursuant to Article V, Section 3(b)(1) or as a petition for writ of certiorari pursuant to Article V, Section 3(b)(3). The jurisdiction of this Court is both limited and defined by the Constitution of this state. This Court has jurisdiction of the cause and the only issue with regard to jurisdiction is whether or not the jurisdiction is discretionary, and, if so, whether or not it should be exercised in the present case.
Florida Constitution, Article V, Section 3(b)(1), provides that this Court:
"Shall hear appeals from final judgments of trial courts imposing the death penalty and from orders of trial courts and decisions of district courts of appeal *16 initially and directly passing on the validity of a state statute. ..." (emphasis supplied)
Thus, a literal reading of the Constitution indicates that there is no discretion in this Court in accepting jurisdiction of an interlocutory appeal from any order passing upon the validity of a statute. However, Florida Constitution, Article V, Section 3(b)(3), provides in applicable part that this Court:
"May review by certiorari ... any interlocutory order passing upon a matter which upon final judgment would be directly appealable to the supreme court. .. ."
For the latter constitutional provision to be of any force and effect, Florida Constitution, Article V, Section 3(b)(1), must be read so as to allow appeal as a matter of right only from "final orders of trial courts ... initially and directly passing on the validity of a state statute," thus giving this court discretion in cases such as the case sub judice. It is a fundamental rule of construction of our constitution that a construction of the constitution which renders superfluous, meaningless or inoperative any of its provisions should not be adopted by the courts. State v. Butler, 70 Fla. 102, 69 So. 771 (1915); State v. Keller, 140 Fla. 346, 191 So. 542 (1939); Miami Shores Village v. Cowart, 108 So.2d 468 (Fla. 1959); In Re Apportionment Law, Senate Joint Res.No. 1305, 263 So.2d 797 (Fla. 1972); City of Tampa v. Birdsong Motors, Inc., 261 So.2d 1 (Fla. 1972). Where a constitutional provision will bear two constructions, one of which is consistent and the other which is inconsistent with another section of the constitution, the former must be adopted so that both provisions may stand and have effect. State v. Butler, supra; Advisory Opinion to the Governor, 96 So.2d 541 (Fla. 1957). Construction of the constitution is favored which gives effect to every clause and every part thereof. Unless a different interest is clearly manifested, constitutional provisions are to be interpreted in reference to their relation to each other, that is in pari materia, since every provision was inserted with a definite purpose. Wheeler v. Meggs, 75 Fla. 687, 78 So. 685 (1918); Scarborough v. Webb's Cut Rate Drug Co., 150 Fla. 754, 8 So.2d 913 (1942); Thomas v. State, 58 So.2d 173 (Fla.) This Court stated in Amos v. Mathews, 99 Fla. 1, 126 So. 308, 316:
"The purpose of the people in adopting the Constitution should be deduced from the Constitution as an entirety. Therefore, in construing and applying provisions of the Constitution, such provisions should be considered, not separately, but in coordination with all other provisions."
To give effect to Article V, Section 3(b)(3) which grants this Court the jurisdiction within its discretion to review by certiorari any interlocutory order passing upon a matter which would be directly appealable to the supreme court, the terminology "orders of the trial court" must be interpreted to mean final orders. The language employed in Article V, Section 3(b)(1), i.e., final judgments of trial courts imposing the death penalty and "decisions" of district courts of appeal, initially and directly passing on the validity of a state statute or a federal statute or treaty, or construing a provision of the state or federal constitution, denote finality. Read in pari materia with the entire clause which contains it and with Section 3(b)(3), the term order as employed in Section 3(b)(1) also denotes finality.[2]
Although Article V, Section 4(2), Constitution of Florida (1968), employing the language "final judgments or decrees," was revised to "orders" by the revision of Article V effective January 1, 1973, because of the context within which the term "order" is utilized and because of the existence of *17 "new" Article V, Section 3(b)(3), we must still adhere to our opinion in State v. Kahler, 224 So.2d 272 (Fla. 1969), wherein we stated that the, "... subject `Order' which allegedly passes on the validity of a state statute must necessarily qualify as a final judgment; otherwise, under the Constitution it could not be directly appealable here."
Accordingly, it is within the discretion of this Court to grant review by certiorari of the instant partial summary judgment and we feel that jurisdiction should be granted. Ordinarily, we would not allow review of this kind because it would ofttimes result in piecemeal review which would in turn result in hardships for one or both of the litigants. However, since this cause involves a question of great public interest and since the determination of the constitutionality vel non of Section 357.08 will be vital to the disposition of the cause below, we exercise our discretion to allow the review sought by Burnsed.
The trial judge set forth the following facts gleaned from statements of fact made by counsel for the parties, based upon depositions of the plaintiff and train crew involved in the accident and upon answers to interrogatories filed in this cause:
"1. That shortly after midnight on March 22, 1972, plaintiff operated and drove his automobile into the side of defendant's freight train standing over an unlighted Pasco County Road lying approximately one mile south of Lacoochee, Florida. The crossing was protected by standard railroad crossback signs.
"2. Plaintiff had on the previous afternoon driven to Lacoochee from Jacksonville, Florida, and between the hours of 4 o'clock and 8 o'clock P.M., had consumed four alcoholic drinks. Shortly after arrival at his sister-in-law's at about 8 o'clock P.M. he consumed an additional drink of an alcoholic nature. The accident occurred at about 2 o'clock A.M. while plaintiff was returning to Jacksonville.
"3. At the time of the accident, no fuses had been placed at the crossing as required by Section 357.08, Florida Statutes.
"4. Depositions of the various members of the train crew reveal the train had been standing on the crossing for approximately ten minutes prior to its departure. The stopping of such train was involuntary, because the train's air brakes had come on automatically and not as a result of any act on the part of the crew. This was due apparently to mechanical failure of a valve which caused a loss of air pressure in the braking system. During the next eight to ten minutes, the crew prepared to gather tools, lanterns, etc., in anticipation of searching for the brake problem, but after a few minutes the brakes themselves began releasing automatically. The train then proceeded on, its crew being unaware that an accident had meanwhile occurred at the crossing."
Upon these facts and after argument of counsel, the trial court granted in part Seaboard's (defendant-below) motion for summary judgment insofar as the trial court determined that Section 357.08, Florida Statutes, is unconstitutional because it constitutes an arbitrary and unreasonable exercise of the state's police power.
Section 357.08, Florida Statutes, provides:
"357.08 Trains blocking highways during darkness, warning signals; violation.  (1) Whenever a railroad train shall engage in a switching operation or stop so as to block a public highway, road or street at any time from one half hour after sunset to one half hour before sunrise, the crew of such railroad train shall cause to be placed a lighted fusee or other visual warning device in both directions from such railroad train upon or at the edge of the pavement of the highway, *18 road or street to warn approaching motorists of the railroad train blocking the highway, road or street; provided, this section shall not apply to railroad crossings at which there are automatic warning devices properly functioning or at which there is adequate lighting. (2) A person who violates any of the provisions of this section is guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083."
Burnsed, petitioner-herein, submits, and we agree, that Section 357.08, Florida Statutes, is clearly within the proper and reasonable exercise of the state's police power, that a great discretion is vested in the legislature to determine public interest and measures for its protection, that there is definitely a reasonable relationship between the questioned statute and the public safety because the danger of injury was real and the protection easily adapted to its avoidance.
Police power is the sovereign right of the state to enact laws for the protection of lives, health, morals, comfort, and general welfare. State ex rel. Municipal Bond and Inv. Co., Inc. v. Knott, 114 Fla. 120, 154 So. 143 (1934), Holley v. Adams, 238 So.2d 401 (Fla. 1970). Relative to the scope of the state's police power, this Court in Atlantic Coastline Railroad Co. v. Coachman, 59 Fla. 130, 52 So. 377 (1910), explicated:
"Since railroad companies are created by the state for quasi public purposes, and are thereby affected by a public interest, the Legislature may to the extent of such interest regulate and control them except in so far as it is restricted by the contract obligation imposed by the charter or statute under which the companies are incorporated, and subject of course to the constitutional restrictions against the impairment of vested rights, denial of the equal protection of the laws, or due process of law.
"The police power of a state embraces regulations designed to promote the public convenience or the general prosperity or the public welfare as well as those designed to promote the public safety or the public health.
* * * * * *
"The police power includes legislative authority to make regulations reasonably necessary or conducive to the public welfare."
It is generally accepted that the state is the primary judge of, and may by statute or other appropriate means, regulate any enterprise, trade, occupation or profession if necessary to protect the public health, welfare, or morals, and a great deal of discretion is vested in the Legislature to determine public interest and measures for its protection. Scarborough v. Newsome, 150 Fla. 220, 7 So.2d 321 (1942); McInerney v. Ervin, 46 So.2d 458 (Fla. 1950); Holley v. Adams, supra; Newman v. Carson, 280 So.2d 426 (Fla. 1973). Legislative action exercised under the state's police power is valid if such exercise is confined to those acts which may reasonably be construed as expedient at least for the protection of public safety, public welfare, public morals or public health. Sweat v. Turpentine & Rosin Factors, Inc., 112 Fla. 428, 150 So. 617, 618 (1933); Eelbeck Milling Company v. Mayo, 86 So.2d 438, 439 (Fla. 1956); Larson v. Lesser, 106 So.2d 188 (Fla. 1958); Zabel v. Pinellas County Water and Navigation Control Authority, 171 So.2d 376 (Fla. 1965).
The reasonable relationship between Section 357.08 and public safety has already been noted by this Court in Seaboard Air Line Railroad Co. v. Jackson, 235 So.2d 298 (Fla. 1970), wherein this Court upheld the constitutionality of Section 357.08 against an attack of vagueness. Therein, this Court announced:
"The question before us then is whether Florida Statutes § 357.08, F.S.A. is void because the term `adequate lighting' is not specifically defined. We think not. A common sense interpretation of the term `adequate lighting' read in the context *19 of the whole Statute means lighting sufficient to allow motorists to see trains blocking the road in time to avoid a collision. If the lighting is inadequate for visual detection of the trains, as stated above, lighted fusees or other visual warning devices must be put out.
"The Legislature could not feasibly define adequate lighting with any fixed standard such as so many candlepower, since what is adequate will vary according to the circumstances existing at each crossing. If there is doubt as to the adequacy of the lighting, fusees or other warning devices can be placed as provided by the Statute. This is a relatively small burden considering the potential threat to human life posed by trains blocking intersections." (emphasis supplied.)
The statute in question is not an arbitrary or unreasonable exercise of the state's police power. By the language of this statute, the Legislature has allowed railroads to utilize lighted fusees or other visual warning devices of the railroad's choice to warn the public of the danger to their life or health. It is immaterial whether the stopping of the train over an unlighted public highway, road or street from one half hour after sunset to one half hour before sunrise, was voluntary or involuntary. The danger to life and limb of the citizen who may be driving into this unlighted railroad crossing is the same. As we have previously declared, this is a relatively small burden considering the potential threat to human life posed by trains blocking intersections. The policy of the Legislature of Florida in promulgating Section 357.08, Florida Statutes, is to protect and preserve human life which clearly falls within the reasonable exercise of the police power.
Seaboard, in its brief and at the bar of this Court, argued that the questioned statute is unconstitutional as being arbitrary and unreasonable because it does not fix a time within which the lighted fusees or other visual warning devices must be affixed. It is a fundamental principle of this Court which has been reiterated on several occasions that this Court has the duty, if reasonably possible, and consistent with constitutional rights, to resolve all doubts as to the validity of a statute in favor of its constitutionality and thereby give it a reasonable interpretation. If possible a statute should be construed so as not to conflict with the Constitution.[3] Every presumption should be indulged in favor of the validity of a statute, and a statute should be considered in the light of the principle that the state is primarily the judge of regulations in the interest of public safety and welfare. Gitlow v. People of New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138. A reasonable interpretation of Section 357.08, Florida Statutes, would include a reasonable time within which to set the lighted fusees or other visual warning devices. The statute implies the allowance of a reasonable time after the blocking of a crossing to provide the requisite lighting and the question as to such reasonable time is a question of fact to be determined under the circumstances of each case. Neither the courts nor the Legislature expect the impossible and this Court recognizes that the warning device cannot be put out instantaneously, but rather a reasonable time is permitted to train personnel to comply with this statute.
For the foregoing reasons, we hold Section 357.08 to be constitutional and reverse the ruling of the trial court to the contrary. Accordingly, the order of the trial court entering partial summary is reversed *20 and this cause is remanded for further proceedings not inconsistent herewith.
It is so ordered.
CARLTON, C.J., and ADKINS, McCAIN and DEKLE, JJ., concur.
ERVIN, J., concurs in part and dissents in part with opinion, in which BOYD, J., concurs.
ERVIN, Justice (concurring in part and dissenting in part).
I agree with the majority that Section 357.08 is constitutional.
However, I disagree as to the interpretation of the quoted portions of Section 3(b)(1) and Section 3(b)(3) of Article V, State Constitution. It appears to me it is intended an appeal as a matter of right can be taken pursuant to Section 3(b)(1) from any order of a trial court or decision of a district court of appeal initally and directly passing on the validity of a state statute, whether it is final or not. On the other hand, it is discretionary with this Court to review by certiorari any interlocutory order passing upon a matter which upon final judgment would be directly appealable to this Court, other than one which is appealable as a matter of right because it initially and directly passes on the validity of a state statute.
The majority opinion overlooks the distinction between an appeal as a matter of right from any order or judgment passing upon the validity of a state statute, whether final or not, and a certiorari review of any other interlocutory order which is only discretionary. Finality of the order is not necessary to review where the validity of a statute is passed upon.
We should not find means to limit our appellate review jurisdiction by interpolating the word "final" when it is not employed. Our duty is to follow the Constitution as written.
BOYD, J., concurs.
NOTES
[1] Formerly Article V, Section 4(2), Florida Constitution (1968), provided in pertinent part: "Jurisdiction. Appeals from trial courts may be taken directly to the supreme court, as a matter of right, only from judgments imposing the death penalty, from final judgments or decrees directly passing upon the validity of a state statute or a federal statute or treaty, or construing a controlling provision of the Florida or federal constitution, and from final judgments or decrees in proceedings for the validation of bonds and certificates of indebtedness. The supreme court may directly review by certiorari interlocutory orders or decrees passing upon chancery matters which upon a final decree would be directly appealable to the supreme court. In all direct appeals and interlocutory reviews by certiorari, the supreme court shall have such jurisdiction as may be necessary to complete determination of the cause on review.
[2] The rule of jusdem generis may be applied to construction of constitutional provisions. State v. Town of Davie, 127 So.2d 671 (Fla. 1961).
[3] Buck v. Gibbs, D.C., 34 F. Supp. 510, mod. 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1940); Hunter v. Owens, 80 Cla. 812, 86 So. 839 (1920); Cragin v. Ocean & Lake Realty Co., 101 Fla. 1324, 133 So. 569, 135 So. 795 (1931), appeal dism. 286 U.S. 523, 52 S.Ct. 494, 76 L.Ed. 1267; Haworth v. Chapman, 113 Fla. 591, 152 So. 663 (1933); Hanson v. State, 56 So.2d 129 (Fla. 1952); Overstreet v. Blum, 227 So.2d 197 (Fla. 1969); Hancock v. Sapp, 225 So.2d 411 (Fla. 1969); Rich v. Ryals, 212 So.2d 641 (Fla. 1968); Tornillo v. Miami Herald Publishing Co., 287 So.2d 78 (Fla. 1973).