356 So.2d 251 (1978)
Gilbert A. TUCKER et Ux., Appellants,
v.
Rudy UNDERDOWN, Etc., et al., Appellees.
DESERET RANCHES OF FLORIDA, INC., Etc., Appellant,
v.
Rudy UNDERDOWN, Etc., et al., Appellees.
SUN BANK OF OCALA, Etc., Appellant,
v.
Rudy UNDERDOWN, Etc., et al., Appellees.
F.E. SULLIVAN, III, et al., Appellants,
v.
Rudy UNDERDOWN, Etc., et al., Appellees.
A. DUDA & SONS, INC., Etc., Appellant,
v.
Rudy UNDERDOWN, Etc., et al., Appellees.
Carolyn R. KEMPFER et al., Appellants,
v.
Rudy UNDERDOWN, Etc., et al., Appellees.
Roy PLATT, Appellant,
v.
Rudy UNDERDOWN, Etc., et al., Appellees.
Nos. 50364-50370.
Supreme Court of Florida.
January 26, 1978.
Rehearing Denied April 5, 1978.
*252 Edward M. Jackson, Cocoa, and Joseph C. Jacobs, Richard W. Ervin and Robert J. Angerer of Ervin, Varn, Jacobs & Odom, Tallahassee, for appellants.
Robert L. Nabors of Nabors, Potter, McClelland & Griffith, Titusville, Frank L. Watson of Freeman, Richardson, Watson, Slade, McCarthy & Kelly, Jacksonville, and Robert L. Shevin, Atty. Gen. and Larry Levy, Asst. Atty. Gen., Tallahassee, for appellees.
ENGLAND, Justice.
Once again we are called upon to resolve difficult ad valorem tax problems generated in the course of the search by local governments for new revenue sources under the 1968 Constitution. This case, like others of recent vintage,[1] comes to us by direct appeal from a circuit court's final judgment passing on the validity of one county's innovative taxing efforts. Here the Brevard County Circuit Court construed Article VII, Sections 2 and 9 of the Florida Constitution, and held valid Sections 125.01(1)(q), 125.01(1)(r) and 200.071(3), Florida Statutes (1975), insofar as they authorize county taxation for municipal purposes by the creation of "municipal service taxing units" without voter approval. We have jurisdiction to deal with the issues presented.[2]
Appellants are taxpayers who own real property within the unincorporated areas of Brevard County. The trial court consolidated their seven individual lawsuits contesting ad valorem taxes imposed within six municipal service taxing units created by the Board of County Commissioners for street lighting and for solid waste disposal. Three issues of law are presented.
The first issue raised by appellants is easily resolved. They challenge the constitutionality of legislation (and underlying county ordinances)[3] by which Brevard County created six municipal service taxing units. This very issue was recently considered and resolved adversely to appellants' position in Gallant v. Stephens, No. 48,604 (Fla., opinion filed Jan. 26, 1978).[4] *253 The consolidated cases now before us differ from Gallant on this issue in only one respect. Gallant involved one municipal service taxing unit for the entire unincorporated area of Pinellas County, while five of the six taxing units created by Brevard County provide municipal services (street lighting) in geographic areas embracing less than the entire unincorporated area of Brevard County.[5] The sixth, a solid waste disposal municipal service taxing unit, does encompass the entire unincorporated area of the county.
The statutes which are challenged expressly contemplate taxing units in only a part of a county's unincorporated area,[6] and appellants do not suggest that the legislation is unconstitutional simply because it permits the establishment of more than one unit within the county. Independently, we know of no reason why a multiplicity of taxing units within a county would be any less consistent with the Constitution than would one unit for the entire unincorporated area of the county. Accordingly, appellants' challenge to these statutes and the underlying county ordinances on the basis of alleged conflict with Article VII, Sections 2 and 9 of the Florida Constitution, is rejected on the authority of our decision in Gallant v. Stephens.
Appellants' second difficulty with Brevard County's taxing units is that, allegedly, many of the properties taxed for solid waste disposal and for street lighting are not benefited in a real or substantial way by the services provided. Appellants suggest that for this reason the tax levies should be stricken, or at least that they should be limited to property owners who are benefited.[7] This issue, too, is easily resolved on the basis of precedent. The trial judge determined that the governing constitutional provisions and statutes require no consideration of direct "benefit" as a basis for taxation, and he determined, in conformity with well-established principles of taxation, that no benefit-tax nexus is otherwise required. See Dressel v. Dade County, 219 So.2d 716 (Fla.3d DCA), aff'd, 226 So.2d 402 (Fla. 1969). Both of the trial judge's determinations are eminently correct.[8]
Appellants' final contention challenges only the 1975 tax levy imposed within Brevard County's Solid Waste Disposal Municipal Service Taxing Unit. The argument is made that the levy of ad valorem taxes for solid waste disposal purposes violates county bond covenants of, and the authorizing resolution for, a 1972 bond issue for the same purposes.[9] Appellees assert, and the trial judge found, that the covenants referred to do not bar the use of ad valorem tax revenues to pay bond service *254 costs (principal and interest) or operating expenses, but rather only prohibit bondholders from compelling the county to levy taxes for these purposes. Our reading of the covenants comports with that of the trial judge and appellees.[10] In levying new taxes for solid waste disposal purposes, the county did not breach its agreement with the bondholders or renege on its promise to the county's taxpayers. See Rianhard v. Port of Palm Beach District, 186 So.2d 503 (Fla. 1966), approving under the predecessor to Article VII, Section 12 of the Florida Constitution, a bond issue with covenants almost identical to those in Brevard County's 1972 bond issue.[11]
Accordingly, Brevard County's use of a municipal service taxing unit to raise tax revenues devoted to solid waste disposal, and its interrelated but optional reduction of user charges imposed to meet debt service and operating costs under the prior bond issue, constitute a permissible financing scheme to meet solid waste disposal needs.
Having decided all issues adversely to appellants, it becomes unnecessary to decide whether the individual litigants in these proceedings have properly established a class action. The trial court's final judgment for appellees, therefore, is affirmed.
OVERTON, C.J., and ADKINS, BOYD, SUNDBERG, HATCHETT and KARL, JJ., concur.
NOTES
[1] Gallant v. Stephens, No. 48,604 (Fla., opin. filed January 26, 1978); Alsdorf v. Broward County, 333 So.2d 457 (Fla. 1976).
[2] Art. V, § 3(b)(1), Fla. Const. We are aided in our deliberations by Circuit Judge Waddell's final judgment, which is not only carefully drawn and clearly worded, but which has meticulously analyzed all of the critical legal issues here presented.
[3] Brevard County Ordinance Nos. 75-12 and 75-14.
[4] The parties in this proceeding filed briefs in Gallant addressing this constitutional issue, as friends of the court. See note 3 of our opinion in that case.
[5] In the aggregate the five street lighting units encompass the entire unincorporated area of the county, but each of the five units has a different millage rate.
[6] § 125.01(1)(q), Fla. Stat. (1975), authorizes a county to establish

"municipal service taxing or benefit units for any part or all of the unincorporated area of the county".
§ 200.071(3), Fla. Stat. (1975), authorizes a tax levy
"[i]n any county which, through a special taxing district or a municipal service taxing unit covering a specific area of the county not within the boundaries of any municipality, provides services. .. ."
[7] Appellants reason that benefits must flow to the subjects of the tax levy by analogy and dicta from four municipal boundary decisions, and by implication from Alsdorf v. Broward County, 333 So.2d 457 (Fla. 1976). Alsdorf, of course, was predicated on the only provision in Florida's Constitution which expressly ties taxation to benefits received. Art. VIII, § 1(h), Fla. Const. Neither line of authority is persuasive for the proposition asserted.
[8] We do not address appellants' assertion that the record does not support a factual finding of benefit to certain taxpayers in the several municipal service taxing units. A finding one way or the other on this point is simply irrelevant to the proceeding.
[9] The 1972 bonds were validated in County of Brevard v. State, No. 72-2366-A, Brevard County Circuit Court, final judgment entered Sept. 26, 1972. The trial court's final judgment determined that no referendum was required because the issue pledged no ad valorem tax revenues and, consequently, was not a "bond" issue within the meaning of Art. VII, § 12 of the Florida Constitution. A Certificate of No-Appeal was filed by the Clerk of the Brevard County Circuit Court on Nov. 7, 1972.
[10] "Section 12... . This bond does not constitute an indebtedness of the County within the meaning of any constitutional or statutory provision or limitation, and it is expressly agreed by the holder of this bond and the coupons appertaining thereto that such holder shall never have the right to require or compel the exercise of the ad valorem taxing power of the County for the payment of the principal of and interest on this bond or the making of any sinking fund, reserve or other payments provided for in the resolution."

"Section 13... . No holder or holders of any obligations issued hereunder or of any coupons appertaining thereto shall ever have the right to compel the exercise of ad valorem taxing power of the issuer or taxation in any form of any real property therein to pay such obligations or the interest thereon or be entitled to payment of such principal and interest from any other funds of the issuer except from the special funds in the manner provided herein."
[11] Appellants suggest that in Webster v. North Orange Memorial Hosp. Tax Dist., 187 So.2d 37 (Fla. 1966), and Wolfe v. City of Fort Lauderdale, 47 So.2d 781 (Fla. 1950), this Court held open the prospect that an exercise of ad valorem taxing power would be enjoined under circumstances such as these. We do not read into these cases anything more than a decision not to pass on matters not ripe for consideration. Nothing in Brevard County's 1972 bond issue prohibits the county or any county-created taxing authority from exercising its plenary power to tax.