Mr. Kenneth B. Cuyler Collier County Attorney 3301 Tamiami Trail East Naples, Florida 33962-4976
Dear Mr. Cuyler:
On behalf of the Collier County Board of County Commissioners, you ask substantially the following question:
May a county administer one consolidated budget for thirty-one separate municipal service taxing units and apply one averaged uniform ad valorem millage rate for municipal services to all parcels of taxable land within those thirty-one taxing units?
In sum, I am of the opinion:
The county may not administer one consolidated budget for thirty-one separate municipal taxing districts and apply one averaged uniform ad valorem millage rate for all parcels of taxable land within those units. If, however, the county merges the separate municipal taxing units into one unit, it may then administer one budget and assess a uniform ad valorem millage rate for municipal services within that unit.
Section 125.01(1)(q), F.S., authorizes the board of county commissioners as the governing and legislative body of a county to establish municipal service taxing or benefit units for any or all of the unincorporated areas of the county to provide certain municipal services, including street lighting.[1] Such services are to be funded by "service charges, special assessments, or taxes within such unit only." (e.s.) Ad valorem taxes may be levied without voter approval to "provide essential facilities and municipal services within the unit" provided that the millage levied on any parcel of property for municipal purposes by all municipal service taxing units and the municipality does not exceed 10 mills.[2]
Section 1(a), Art. VII, State Const., provides that no tax shall be levied except according to law. Thus, any exercise of the taxing power by a county must be in accordance with the state statute permitting its exercise.[3] The provisions of s.125.01(1)(q), F.S., contemplate that municipal service taxing units are created to provide municipal services within that unit only and that taxes will be imposed based upon the cost of providing such services within that unit.
You refer to the decisions of The Supreme Court of Florida in Gallant v. Stephens[4] and Tucker v. Underdown.[5] In Gallant, The Supreme Court upheld the creation of a municipal service taxing unit encompassing the unincorporated areas of the county. The Court characterized these municipal service taxing units as a method by which counties may provide municipal services, within the 10 mill cap for municipal services, without voter approval.
The Gallant Court rejected claims that the taxes, which were levied within the unit and thus not on municipal residents, did not meet the constitutional requirement that taxes be imposed "at a uniform rate within each taxing unit."[6] The Court held that the constitutional "uniformity" requirement applies to objects of taxation — the subjects within the unit actually being taxed — rather than the taxing authority itself.[7] Since the tax was uniformly imposed within the municipal service taxing unit, it complied with the constitutional requirement, notwithstanding that the tax was "county" imposed.
Shortly thereafter, The Supreme Court in Tucker v. Underdown, supra, considered the authority of the county to create five municipal service taxing units instead of a single unit within the county. The Court, noting Gallant, concluded that "we know of no reason why a multiplicity of taxing units within a county would be any less consistent with the Constitution than would one unit for the entire unincorporated area of the county."[8] While the above cases clearly establish that the county has the authority to create several municipal service taxing units within the county, I find nothing in either Gallant or Tucker which authorizes a county to consolidate the budgets of the several districts and levy an averaged uniform tax rate for all such districts. In fact, each of the five municipal service taxing units established in Tucker to provide street lighting had a different millage rate.[9]
The following year, The Supreme Court of Florida in State v. Sarasota County[10] characterized the purpose of s. 125.01(1)(q), F.S., as providing an additional method of financing by "allow[ing] counties to designate a limited geographic area as a special taxing district and thereby permit that limited geographic area to pay for its own improvements." As noted above, the language of s. 125.01(1)(q), F.S., provides that taxes are to be imposed within a municipal service taxing unit only for the purpose of providing essential facilities and municipal services within that unit.[11] A consolidation of the budget and a millage rate set by determining the needs of not just the taxing unit but thirty other units and taking an average would appear to be contrary to that intent.
Section 125.01(1)(q), F.S., however, clearly recognizes the authority of a county to merge existing municipal service taxing units.[12] Accordingly, if the purpose and function to be served by the thirty-one municipal service taxing units is substantially the same, the county may wish to merge the units into one municipal service taxing unit. Such a procedure would remove any question regarding the use of one budget and millage rate.
Thus, while the county may merge the thirty-one municipal service taxing units created pursuant to s. 125.01(1)(q), F.S., into a single unit and apply a uniform rate of taxation therein, it appears that if the county creates and maintains separate municipal service taxing units, a millage rate should be independently established for each unit.
Accordingly, I am of the opinion that the county may not administer one consolidated budget for thirty-one separate municipal taxing district and apply one averaged uniform ad valorem millage rate for all parcels of taxable land within those units. If, however, the county merges the separate municipal taxing units into one unit, it may then administer one budget and a uniform ad valorem millage rate for municipal services within that unit.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 125.01(1)(q), F.S., provides that the boundaries of a municipal service taxing or benefit unit may include part or all of a municipality, subject to the consent by ordinance of the governing body of the affected municipality given either annually or for a term of years.
[2] See, the last sentence of s. 125.01(1)(q), F.S.; and s.125.01(1)(r), F.S. See also, the second sentence of s. 9(b), Art. VII, State Const., which states that "[a] county furnishing municipal services may, to the extent authorized by law, levy additional taxes within the limits fixed for municipal purposes [i.e., 10 mills]."
[3] See generally, Walter E. Heller Company Southeast, Inc. v. Williams, 450 So.2d 521 (3 D.C.A. Fla., 1984), pet. for rev. den.,462 So.2d 1108 (Fla. 1985) (Florida law follows the general rule that taxes can be levied, assessed and collected only in a manner ordained by statute).
[4] 358 So.2d 536 (Fla. 1978).
[5] 356 So.2d 251 (Fla. 1978).
[6] Section 2, Art. VII, State Const. 
[7] 358 So.2d at 541.
[8] 356 So.2d at 253.
[9] Id. at 253 fn. 5.
[10] 372 So.2d 1115, 1117 (Fla. 1979).
[11] Cf., Prescott v. Board of Public Instruction of Hardee County, 32 So.2d 731 (Fla. 1947) (state, county, and district taxes must be expended for state, county, or district purposes, and taxes of one unit cannot be expended for purposes of another unit); 50 Fla.Jur.2d s. 2:16 (taxation must be for benefit of the public of the area taxed), and s. 2:34.
[12] See, s. 125.01(1)(q), F.S., which states that the governing and legislative body of the county may "[e]stablish, and subsequently merge . . . municipal service taxing units . . . ."